In the Matter of Proving the Last Will and Testament and Codicils Thereto of EDWARD W. BROWNING, Deceased, as a Will of Real and Personal Property.

ALEXANDER P. WATTS and HARRY HACKMAN, Executors Named in the Second Codicil, Appellants; HOSPITAL FOR JOINT DISEASES, and GEORGE P. BIGGS and GEORGE B. BIGGS, as Executors, etc., of FLORENCE BIGGS, Deceased, Beneficiaries, Appellants; TITLE GUARANTEE AND TRUST COMPANY, as Executor, etc., of EDWARD W. BROWNING, Deceased, DANIEL A. SHIRK, General Guardian of DOROTHY BROWNING HOOD, and JOHN J. BENNETT, JR., Attorney-General, Respondents.

First Department, June 23, 1936.

*Edward J. Chapman* and *Benjamin F. Schreiber* of counsel [*Morris Buchter* and *Harold M. Hoffman* with them on the brief; *Schreiber, Buchter & Rathheim*, attorneys for Alexander P. Watts, and George P. Biggs and George B. Biggs, executors, etc., of Florence Biggs, deceased; *Edward J. Chapman*, attorney for Harry Hackman], for the appellants.

*Louis J. Vorhaus* and *William Blau*, for the appellant Hospital for Joint Diseases.

*Joseph V. McKee*, for the executor-respondent, Title Guarantee and Trust Company.

*Edwin R. Wolff* of counsel [*Daniel A. Shirk* with him on the brief], for the respondent Daniel A. Shirk, general guardian of Dorothy Browning Hood.

*Robert P. Beyer, Assistant Attorney-General*, of counsel [*John J. Bennett, Jr., Attorney-General*], for the respondent John J. Bennett, Jr., Attorney-General.

GLENNON, J. The decedent, Edward W. Browning, made his last will and testament in 1912. The Title Guarantee and Trust Company, one of the respondents, was named as executor. In August, 1930, he executed a first codicil wherein he provided that certain persons were not to share in his estate, but otherwise reaffirmed the contents of the will. About twelve days before his death, which occurred on October 12, 1934, a second codicil was drawn. The appellants, Watts and Hackman, and the Title Guarantee and Trust Company, were designated in it to act as executors. After Browning's death the executors offered the three instruments for probate. No objections were filed by any of the parties in interest.

According to the surrogate who had charge of this proceeding, an insurance broker named Hancock informed him " not under oath and not in formal question and answer form " of facts " which, if true, would indicate the possibility, not necessarily the probability, * * * that the office of the District Attorney would be concerned with the happenings." He communicated with the district attorney of New York county and an investigation was made and statements taken from various witnesses, but no indictments were found. The surrogate requested counsel for the executors to furnish him with all statements of witnesses that had been taken by them. As a result he held what was termed by him as

an " inquiry " under section 144 of the Surrogate's Court Act which reads in part as follows:

" § 144. Probate not allowed, unless surrogate satisfied.

" 1. Before admitting a will to probate, the surrogate must inquire particularly into all the facts and circumstances, and must be satisfied with the genuineness of the will, and the validity of its execution.

" 2. If it appears to the surrogate that the will was duly executed; and that the testator, at the time of executing it, was in all respects competent to make a will and not under restraint; it must be admitted to probate as a will valid to pass real property, or personal property, or both, as the surrogate determines, and the petition and citation require, and must be recorded accordingly. The decree admitting it to probate must state whether the probate was or was not contested."

There is no provision in the section for citing or notifying legatees and devisees of the pendency of the proceeding unless they would be entitled to take by virtue of the provisions of the Decedent Estate Law. To supply this deficiency the surrogate directed one of the attorneys to notify all parties in interest to be present. Considerable testimony was taken. The surrogate propounded all the questions on direct examination. While there were questions asked by counsel who represented some of the parties, nevertheless, they did so apparently by grace of the surrogate rather than as matter of right. During the course of the inquiry counsel for one of the legatees raised the point that he might have desired a trial by jury if the proceeding were other than a preliminary one. The surrogate replied: "*I do not know, under the statute, whether you would be entitled to it, because there is no controversy here.*" Apparently, the surrogate was of the opinion that the question as to the testamentary capacity of the decedent and the validity of the execution of the will were not matters for the consideration of a jury where no formal objections were filed.

The Title Guarantee and Trust Company, subsequent to the hearing, was permitted to amend its petition by eliminating therefrom its request to admit the second codicil to probate, and further, it was given the right to appear in opposition to the probate even though it had never filed objections. At that stage of the proceeding we believe that under the unusual circumstances which existed, the practice which should have been followed was to have directed the filing of objections so that controverted questions of fact might have been determined by a jury as provided by sections 147 and 149 of the Surrogate's Court Act. In *Matter of Eno* (196 App. Div. 131) Judge PAGE said: " The proceeding in the Surrogate's

Court for trial of issues concerning the validity of a will was intended to take the place of an action in the Supreme Court under the former section 2653-a of the Code of Civil Procedure under which it was held that the determinations of questions of fact were the same as in any other case, where the issues were triable by a jury."

The meaning of the word " satisfied," as employed in section 144 of the Surrogate's Court Act, was well expressed by Surrogate KETCHAM in *Matter of Dunn* (94 Misc. 578; affd., *sub nom. Matter of Barlow*, 180 App. Div. 860.)

We do not believe that it was the intent of the Legislature in enacting section 144 of the Surrogate's Court Act, and the former sections of the Code of Civil Procedure from which it was derived, to preclude legatees and devisees, who were not entitled to be notified as a matter of right of what has been termed an inquiry, from having controverted questions, which ordinarily come up in a probate proceeding, determined in the manner which is otherwise provided for in sections 147 and 149 of the Surrogate's Court Act. Consequently, we have reached the conclusion that in so far as the second codicil was concerned the proceeding was not a final determination in the sense that the appellants should be precluded from reoffering the second codicil for probate.

That portion of the decree, therefore, which denies probate to the instrument dated October 1, 1934, should be reversed and the proceeding remitted to the Surrogate's Court, where objections may be filed by the Title Guarantee and Trust Company, which now is contesting probate of that particular instrument, or by any other party in interest within the meaning of the Surrogate's Court Act, in order that a full and fair opportunity may be given to the appellants to safeguard their rights.

TOWNLEY and UNTERMYER, JJ., concur; MARTIN, P. J., concurs in separate memorandum; DORE, J., dissents and votes for affirmance.

MARTIN, P. J. (concurring). I concur in the opinion of Mr. Justice GLENNON. The orderly administration of the law requires a trial of issues. Issues are not to be disposed of as they were in this proceeding.

DORE, J. (dissenting). I dissent and vote to affirm the decree on the ground that the statute obligated the surrogate to inquire before permitting probate even though no objection was filed to the second codicil; that the surrogate's conclusion refusing probate to such codicil is supported by the overwhelming preponderance of the credible testimony; and that a second trial should not now be required when the parties appellants in interest, who actually had notice and appeared, made no objection to the

inquiry during the lengthy proceedings and also failed to make any seasonable demand for a jury trial.

Decree, so far as appealed from, denying probate of the instrument dated October 1, 1934, reversed and proceeding remitted to the surrogate of the county of New York for further action in accordance with the opinion.