In the Matter of the Estate of EDWARD W. BROWNING, Deceased.

Surrogate's Court, New York County, January 6, 1937.

*Schreiber, Buchter & Rathheim* [*Benjamin F. Schreiber* of counsel], for Alexander P. Watts, George P. Biggs and George B. Biggs, executors, etc., of Florence Biggs, deceased, for the motion.

*Edward J. Chapman* [*Harry Hackman* of counsel], associated with Mr. Schreiber, for the motion.

*Louis J. Vorhaus* and *William Blau* [*Louis J. Vorhaus* of counsel], for the Hospital for Joint Diseases.

*Joseph V. McKee,* for the Title Guarantee and Trust Company, executor, respondent.

*Edwin R. Wolff* [*James H. Hickey* and *Edwin R. Wolff* of counsel], for Daniel A. Shirk, general guardian of Dorothy Browning Hood, respondent.

*John J. Bennett, Jr., Attorney-General,* by *Robert P. Beyer* of counsel.

McLAUGHLIN (CHARLES B.), J., Acting Surrogate. The sole question presented upon this motion is the right of the Title Guarantee and Trust Company to file objections to the probate of the second codicil of the deceased. A will and first codicil have already been probated and in both instruments the Title Guarantee and Trust Company is named as sole executor. The Appellate Division has determined that the procedure heretofore had has been improper and has stated that there should be a trial after the filing of objections and then proceeding in the ordinary way to trial either with or without a jury. (248 App. Div. 97.) It is quite clear that the question now presented was not before that court and any statements in the prevailing opinion upon the right of the Title Guarantee and Trust Company to file objections was not then litigated. It may be assumed that the language used was merely *obiter dicta* and referred only to the proper procedure when and if the right to file objections actually existed.

The contention that the order of August 6, 1935, should be controlling as the law of this case is not sustained. That was a default order in a matter where the procedure relative thereto has been held to be improper. That order is improper as being an integral part of that procedure which has been set aside. Under the general clause for relief in the notice of motion, we shall consider that the default has been opened and that the objections are properly attacked *ab initio.* That is the ruling of this motion.

It is also true that the moving party has taken a stand in the appellate courts and particularly on the application in the Court of Appeals which seems to be opposite to that taken on this application. However, there, too, the situation was dependent upon the

procedure adopted and the validity and binding force of the order of August 6, 1935. There is no judicial estoppel created by those acts for we now start this probate proceeding anew in accordance with terms of the decision of the Appellate Division.

There remains the question whether the Legislature intended that the right of an executor of a valid former will to file objections was to be measured solely by his right to any commission or the amount of the commissions. It appears to be conceded by the papers herein that in some instances he may file such objections but the moving parties seek to limit those to ones where he will get more money by way of commissions if the objections were sustained. It would appear that the administration of the law would indeed be a pitable thing if such were the yardstick to measure the right of the executor to file objections. An executor's interest should never be measured by possible commissions. It should be measured primarily by his duty to the testator to see that no alleged fraudulent will is admitted to probate without objections, thus frustrating the intention of the deceased as expressed in a proper will and codicil. Logically the positions of an executor and legatee are different. The former obtains nothing under the will while the latter receives only by the terms of that instrument and gives nothing in return. What the executor receives by way of commissions he gives consideration for by his work in administering the estate. The duty of an executor is plainly then to find out what the testator actually did and try to carry that out even though it may necessitate the filing of objections to a second codicil under the provisions of section 147 of the Surrogate's Court Act.

The fallacy of saying that it is the amount of the estate that shall control the right of the executor to file objections is evident. What additional rights and duties has an executor in an estate of over $100,000 to one where the estate is only $99,000? There is none, and it is quite clear that the Legislature never intended any or it would have said so. It would seem equally to be the duty of the executor in both of these estates to see that no fraudulent will or codicil of the deceased was admitted to probate except after objections had been filed by him and duly disposed of. We are mindful of the fact that there are no controlling decisions in the appellate courts to sustain or reject the conclusion just arrived at and that there are some in the Surrogates' Courts which seem to base their decisions contra upon the financial gain that may accrue to the executor by way of commissions. The language used in *Matter of Davis* (182 N. Y. 468, at p. 473) would indicate that it is the executor's primary and positive duty to see that the estate is administered as called for by the will and that no alleged fraudu-

lent codicil be probated without objection on his part. The facts submitted in the present case show conclusively the wisdom of such a construction of section 147 of the Surrogate's Court Act. Two valid instruments have been probated. The third has been refused probate by a surrogate whose procedure and not his findings were disapproved by an appellate court. The dissenting opinion in the latter court says that there was abundant evidence to sustain the findings of the surrogate (248 App. Div. 97, 101). To strike out these objections would mean not only the most narrow statutory construction but also would do violence to common sense and justice. No court of original jurisdiction should do so.

It is true that at page 472 the Court of Appeals says that " a pecuniary interest to protect, either as an individual or in a representative capacity," is essential to one filing objections. However, at page 473 the court adopts the language of the surrogate which is as follows: " The right to administer the estate is a sufficient interest in this State to entitle the person in whom it is vested to contest the probate of a will." Here the Title Guarantee and Trust Company is in the same position for it is the sole executor in the probated instruments and logically there can be no distinction between the rights of a sole administrator and a sole executor.

Motion is denied. In order to expedite any appeal settle order on one day's notice.